**BEDFORD LANDING TAXPAYERS' AS-SOCIATION, INC. et al.**

v.

**George ROMNEY et al.**

**Civ. A. No. 72–1774–C.**

United States District Court,
D. Massachusetts.

Aug. 8, 1972.

**1188**

Martin A. Lipman, Lipman & Lipman, New Bedford, Mass., for plaintiffs.

James N. Gabriel, U. S. Atty., Frederick Kellogg, Asst. U. S. Atty., Boston, Mass., for defendant George Romney; Chris Byron, New Bedford, Mass., for other defendants.

## OPINION

CAFFREY, Chief Judge.

This matter came before the court for hearing on plaintiffs' application for a preliminary injunction. The individual plaintiffs describe themselves as owners of real property in the Bedford Landing historical district of New Bedford, while the corporate plaintiff is a non-profit association organized for the purposes of preserving and enhancing the Bedford Landing historical district of New Bedford. Respondents include the Secretary of the Department of Housing and Urban Renewal, the Executive Director of the New Bedford Redevelopment Authority, the Project Engineer of the New Bedford Redevelopment Authority and the New Bedford Redevelopment Authority.

From the papers on file it appears undisputed that as part of the New Bedford, Massachusetts Urban Redevelopment project, a new highway called the John F. Kennedy Memorial Highway was designed, authorized by the City of New Bedford and approved for 75% federal funding on November 17, 1965. A loan and grant contract for the acquisition of the land and construction of the highway was issued on January 25, 1966. Later amendments to the contract increased the amount of funding necessary to meet increased costs over the amount of the original estimate.

As of the date of the hearing on the motion for preliminary injunction, the highway project was 90% completed. The roadway itself was three-quarters constructed and all that remained to be done to complete the highway was to pave a two block section. The so-called Rotch Counting House is located in the center of the right of way of the remaining two blocks of the highway.

The Rotch Counting House was offered in 1966 to the Waterfront Historic Area League, a local non-profit historic preservation group. This offer has never been rescinded, and was at the time

of the hearing, and presently is still open. It has not been accepted.

Counsel for plaintiffs at the hearing conceded that they did not wish to change the course of the 90% completed highway and that in substance the real relief requested by plaintiffs in this application for injunction is what amounts to an order from this court directing the federal government to pay the cost of moving the Rotch Counting House out of the path of the road. Plaintiffs also seek an order delaying the completion of the road until the moving of the Rotch Counting House has been accomplished at federal expense. Counsel advised the court that the cost of moving this stone constructed building is in the order of $250,000, that attempts are currently being made to raise this sum privately, but that as of the hearing, insufficient funds had been raised thus far.

The Rotch Counting House was not inventoried in the National Register of Historic Places until September 28, 1971, on which date an application to have it so inventoried was received by the U. S. Department of Interior National Park Service. This, of course, was six years after final federal funding had been approved for the road project and was long after the land acquisition, building demolition and at a time when the road was well on its way to completion.

█ It is settled law that in order to obtain injunctive relief the petitioner must show inadequacies of the remedy at law, probability of irreparable harm and probability of success on the merits. Automatic Radio Mfg. Co., Inc. v. Ford Motor Company, 390 F.2d 113, 115 (CA 1 1968).

A threshold question to be resolved herein is whether or not either the corporate or the individual plaintiff have standing to sue under the doctrines of the Supreme Court as recently enunciated in Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), Data

Processing Service v. Camp, 397 U.S. 150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), and more particularly in Sierra Club v. Morton, 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972). None of the plaintiffs allege any use, ownership or other economic interest in the Rotch Counting House. While the individual plaintiff does allege ownership of some other property within the confines of the New Bedford historical district, there is no allegation that completion of the road would adversely affect the individual plaintiffs themselves or the Bedford Landing Taxpayers' Association in their activities. Nor is there any allegation by plaintiffs that they use the Rotch Counting House. The only damage claims made by plaintiffs are the conclusory allegations in the complaint that the highway, if completed, would have an adverse effect on much tourist activity on Pier 3 and the Wharf area, that it would not be wide enough, that it might block traffic on Water Street and that it would prevent or hinder tourists from going to the Wharf area from the historic district. These allegations stand on a par with the allegations described in the Sierra Club case. There the plaintiffs complained that they objected to the road there because it "would destroy or otherwise affect the scenery . . . and would impair the enjoyment of the park for future generations." The Supreme Court ruled that this general type of allegation was insufficient to confer standing to sue on the plaintiffs who made it. The Supreme Court also pointed out in Sierra that plaintiffs had failed to allege that they personally would be affected in any of their activities or pastimes by the objected-to development. The court likewise noted that the Sierra Club failed to allege that its members use the area for any purpose or that their use would be significantly affected by the proposed actions.

The plaintiffs here make allegations of damages that are no more personal or

no more definite and specific than the allegations ruled inadequate by the Supreme Court in *Sierra Club*. In the present state of the amended complaint it appears plaintiffs have failed to state a cause of action because of the remoteness of their interest in this matter and because of their failure to allege actual damages within the requirements of the ruling in *Sierra Club*. Their allegations amount to a charge that completion of the road would make access to the area less convenient for the general public. This is not an adequate basis on which to base a claim for injunctive relief.

Given this extremely dubious standing to sue status, I rule that plaintiffs have not shown herein that they are so related to this case as to establish a probability of their suffering irreparable harm if the road project proceeds.

With regard to plaintiffs' burden of showing probable success on the merits, having in mind that plaintiffs are seeking to indefinitely block a project 90% completed, that the plaintiffs concede that they seek no change in the road location and are willing to have the road finished if the house is moved at Government expense, and that, in order to prevail ultimately, plaintiffs would have to obtain an order for the retroactive application of the National Environmental Protection Act, I rule that in the light of the decided cases there is not a probability that such a retroactive application of the statute can be obtained in this case. See Pennsylvania Environmental Council, Inc. v. Bartlett, 315 F. Supp. 238 (M.D.Pa.1970). See also Elliot v. Volpe, 328 F.Supp. 831 (D.Mass.1971) in which Judge Murray of this court refused to make a retroactive application of this statute to the construction of Route I–93 in Somerville. It should be noted that in the instant case, just as in the *Elliot* case, the location of the road, land acquisition and existing building demolition and road construction all had been begun prior to the litigation. The case of Arlington Coalition on Transportation v. Volpe, 458 F.2d 1323 (CA 4 1972) is distinguishable from the instant case, in that the facts of that case reveal that the program under attack in that case had not received federal approval, construction contracts had not been awarded nor had construction begun at the time of the litigation. See also San Francisco Tomorrow v. Romney, 342 F.Supp. 77 (M.D.Cal.1972). See also South Hill Neighborhood Association v. Romney, 421 F.2d 454 (CA 6 1970), cert. denied, 397 U.S. 1025, 90 S. Ct. 1261, 25 L.Ed.2d 534 (1970).

█ In summation I rule that plaintiffs have not shown a probability of success on the ultimate merits. There appears to be grave doubt as to whether they have alleged a cause of action and grave doubt as to their standing to sue and as to their suffering legal harm irreparable or otherwise. I note the frank concession of plaintiffs' counsel at the hearing translates to an admission that this litigation in reality seeks either of two rulings, a substitution of this court's judgment as to the advisability of spending federal funds to move the Rotch Counting House for the adverse judgment already made by that part of the Executive Branch of Government to whom Congress has given this responsibility, or, failing to obtain such a favorable court order, this case represents a buying of more time in which to continue to seek additional private contributions for the same purpose.

Accordingly, the motion for a preliminary injunction is denied.